UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ZEALOUS WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | No. 10 C 2499 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| TOM DART, | ) | |
| | ) | |
| Defendant. | ) | |

**M‍EMORANDUM O‍PINION AND O‍RDER**

Plaintiff Zealous Williams, currently an inmate at Sheridan Correctional Center, brought this lawsuit against Cook County Sheriff Tom Dart, alleging that he was able to attend only one communal Muslim service and was not provided a religiously proper diet during his four-month stint in Cook County Jail. Dart has moved for summary judgment. The motion is granted.

**Background**

Dart filed his summary judgment motion, supporting memorandum, and Local Rule 56.1(a) statement of undisputed facts on May 6, 2011. The same day, Dart served Williams, a *pro se* litigant, with a Local Rule 56.2 Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment, which warned of the consequences of failing to respond to Dart's summary judgment motion and Local Rule 56.1(a) statement. At a motion hearing on May 26, 2011, the court set a briefing schedule requiring Williams to file his responsive materials by July 5, 2011. The July 5 date came and went, so the court entered an order giving Williams more than three additional weeks, until July 29, 2011, to file his summary judgment materials.

Despite being given a second chance, Williams filed neither a Local Rule 56.1(b)(3) response to Dart's Local Rule 56.1(a) statement nor a brief in opposition to Dart's motion. Williams' *pro se* status does not excuse his non-compliance with the rules. *See Cady v. Sheahan*,

467 F.3d 1057, 1061 (7th Cir. 2006); *Greer v. Bd. of Ed. of City of Chi.*, 267 F.3d 723, 727 (7th Cir. 2001). Accordingly, the court accepts as true the facts set forth in Dart's Local Rule 56.1(a) statement, though it will view those facts in the light most favorable to Williams. *See* N.D. Ill. L.R. 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); *Parra v. Neal*, 614 F.3d 635, 636 (7th Cir. 2010); *Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 393 (7th Cir. 2009); *Cady*, 467 F.3d at 1061; *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006); *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005); *Koszola v. Bd. of Educ. of City of Chi.*, 385 F.3d 1104, 1109 (7th Cir. 2004); *Smith v. Lamz*, 321 F.3d 680, 682-83 (7th Cir. 2003).

Williams was confined as a pretrial detainee at the Cook County Jail from January 2, 2010, to May 1, 2010. Doc. 35 at ¶ 1. He was raised a Baptist and became a Muslim in 1989, although his jail book card lists his religion as Baptist. *Id*. at ¶¶ 6-8. Williams describes the essential practices of being a Muslim as: praying to Allah, charity, observing Ramadan, making a pilgrimage to Mecca, and not eating pork. *Id*. at ¶ 9. With respect to prayer, Williams must pray five times a day while facing east, and before praying must wash his face, hands, feet, and arms and legs up to his elbows and ankles. *Id*. at ¶ 10.

During Williams' four months at the Jail, only one communal Muslim prayer service was held. *Id*. at ¶ 11. Muslim services are performed by non-inmate volunteers from the Muslim community, and the infrequency of communal services during that time frame resulted from the lack of such volunteers. *Id*. at ¶¶ 17-19. Williams was allowed to keep the Koran and the Bible in his cell, and could pray, study the Koran, and meditate in his cell at any time; although his cell was dirty, he "still got down there and … still prayed to Allah." *Id*. at ¶¶ 12-14.

Williams requested an Islamic diet, but the request was denied because Islamic diets were not offered at the Jail. *Id*. at ¶¶ 22, 26, 29. Williams also requested a Kosher diet, which like an Islamic diet is pork-free, but that request was denied because Williams is not Jewish. *Id*. at ¶ 23. Still, from January 31, 2010 through May 31, 2010, pork and pork derivatives were not served at the Jail. *Id*. at ¶¶ 27-28. Williams claims to have suffered emotional distress, spiritual distress, and "physical distress" in the form of depression and sleepnessness due to his inability to practice his religion. *Id*. at ¶ 35.

The Jail made the "Detainee Grievance Procedure" available to all inmates in 2010. *Id*. at ¶ 30. Williams filed at least twelve written request slips and several grievances regarding the lack of Muslim services, but he did not fill out any grievances regarding the denial of a Kosher diet. *Id*. at ¶¶ 31-32. Williams did not appeal the denial of any grievance he did file despite a Jail rule requiring inmates to properly appeal a grievance before filing a lawsuit. *Id*. at ¶¶ 33-34.

## Discussion

**I.    PLRA Exhaustion**

The Prison Litigation Reform Act ("PLRA") requires prisoners, including pretrial detainees, to exhaust "administrative remedies as are available" before bringing a damages suit regarding the conditions of their confinement. 42 U.S.C. § 1997e(a); *see Porter v. Nussle*, 534 U.S. 516, 532 (2002). To satisfy this exhaustion requirement, a pretrial detainee "must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Dart contends that Williams failed to exhaust his diet claim and his communal service claim. Dart has the burden of proof on the exhaustion issue. *See Maddox v. Love*, __ F.3d __, 2011 WL 3690049, at *9 (7th Cir. Aug. 24, 2011) (citing *Jones v. Bock*, 549 U.S. 199, 212 (2007)). Dart has satisfied his burden regarding the diet claim but not the communal services claim.

When told that no Islamic diet was available, Williams requested a Kosher diet but the request was denied because he is not Jewish. Asked if he filed a grievance, Williams responded "No, not for the Kosher diet," explaining that he "kn[e]w what the answer would be." Doc. 37-1 at 18. Williams apparently believed that filing a grievance regarding the Kosher diet would be futile, but futility is not an exception to the PLRA's exhaustion requirement. *See Fletcher v. Menard Corr. Ctr.*, 623 F.3d 1171, 1173 (7th Cir. 2010); *Dixon v. Page*, 291 F.3d 485, 488 (7th Cir. 2002). Accordingly, Dart is entitled to summary judgment on the religious diet claim. *See Dixon*, 291 F.3d at 488.

Dart has not shown that Williams failed to exhaust his remedies regarding the lack of communal Muslim religious services. Dart argues that Williams failed to appeal the denial of his grievances regarding the lack of services. Williams averred in his deposition, however, that he received no responses to those grievances and thus could not appeal. Doc. 37-1 at 13. A failure by prison officials to respond to a grievance renders an administrative remedy not "available" for purposes of the PLRA, thus defeating Dart's submission that Williams' communal services claim should be dismissed on exhaustion grounds. *See Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005); *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002).

## II.     Merits of the Communal Muslim Service Claim

The complaint does not specify the legal theory underlying Williams' communal Muslim services claim.* A plaintiff need not plead legal theories, however, and the complaint's factual allegations provide fair notice that the claim sounds under both the First Amendment's Free Exercise Clause and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42

---

* Although Dart argues that his lack of personal involvement relieved him of liability for the religious diet claim—an argument rendered moot by the court's holding that Williams failed to exhaust that claim—Dart makes no such argument for the communal services claim. Doc. 37 at 12-13. Accordingly, the court will not address whether Dart had sufficient personal involvement to support liability for the communal services claim.

U.S.C. §§ 2000cc to 2000cc-5. *See Ortiz v. Downey*, 561 F.3d 664, 670 (7th Cir. 2009). The relief available to Williams for that claim is severely circumscribed. Because Williams is no longer confined in Cook County Jail, his request for injunctive relief is moot. *See Koger v. Bryan*, 523 F.3d 789, 804 (7th Cir. 2008). And because Williams does not claim to have suffered physical injury, he may not obtain compensatory damages. *See* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."); *Pearson v. Welborn*, 471 F.3d 732, 744 (7th Cir. 2006) (mental and physical depression, weight loss, appetite loss, and insomnia do not qualify as "physical injury" under § 1997e(e)). The relief available to Williams is besides the point, as the undisputed facts entitle Dart to summary judgment on the communal services claim.

### A. Free Exercise Clause

The Free Exercise Clause guarantees inmates a "reasonable opportunity" to practice their religion. *Cruz v. Beto*, 405 U.S. 319, 322 (1972); *see also Tarpley v. Allen County, Ind.*, 312 F.3d 895, 898 (7th Cir. 2002). "However, prison restrictions that infringe on an inmate's exercise of his religion are permissible if they are reasonably related to a legitimate penological objective, such as security and economic concerns." *Maddox*, 2011 WL 3690049, at *8 (citing *Turner v. Safley*, 482 U.S. 78, 89-91 (1987)). "There are four factors that courts must consider in determining whether a prison regulation is constitutional: [1] whether the regulation is rationally related to a legitimate and neutral governmental objective; [2] whether there are alternative means of exercising the right that remain open to the inmate; [3] what impact an accommodation of the asserted right will have on guards and other inmates; and [4] whether there are obvious alternatives to the regulation that show that it is an exaggerated response to prison concerns." *Lindell v. Frank*, 377 F.3d 655, 657 (7th Cir. 2004) (citing *Turner*, 482 U.S. at 89-91). Applying

those factors here yields the conclusion that Dart is entitled to summary judgment on Williams' Free Exercise claim.

First, the Jail's policy of allowing group services only when an outside volunteer is available to lead the services is rationally related to the legitimate government interest of security. The Seventh Circuit has held that a jail may require that group religious services be led by outside volunteers. *See Hadi v. Horn*, 830 F.2d 779, 784 (7th Cir. 1987) ("security would be jeopardized by granting inmates positions of authority as religious leaders over other inmates"); *see also McRoy v. Cook Cnty. Dep't of Corr.*, 366 F. Supp. 2d 662, 678-79 (N.D. Ill. 2005) (same in a case involving Muslim services at the Cook County Jail), *aff'd*, 205 Fed. Appx. 462 (7th Cir. 2006). The lack of an outside Muslim volunteer to lead services therefore provides a legitimate justification for the Jail's failure to hold more than one communal Muslim service during Williams' four months there. *See Walker v. Dart*, 2010 WL 3307079, at *10 (N.D. Ill. Aug. 19, 2010) (rejecting Free Exercise claim where there were no Muslim services for nine months due to the lack of outside volunteers).

Second, although communal services were largely unavailable, Williams had alternative means of practicing his religion. As noted above, he was allowed to keep the Koran and the Bible in his cell and could pray, study the Koran, and meditate in his cell at any time. Those alternatives are sufficient under the Free Exercise Clause. *See id*. at *11 (praying alone in one's cell and being able "to study Quran and to reflect on scriptures" were adequate alternatives); *Grant v. DeTella*, 1999 WL 966988, at *4 (N.D. Ill. Oct. 6, 1999) (prayer in one's cell is a legitimate alternative to communal worship).

Third, accommodating Williams' desire for communal religious services without an outside volunteer would have had a significant adverse impact on jail administration. "[T]o change the prison's policy and allow services to continue in the absence of an imam would

significantly impact prison resources and could affect prison security. Presumably, more prison guards would have to be deployed to oversee an inmate-led service given the types of conflicts that would likely arise." *McRoy*, 366 F. Supp. 2d at 679; *see also Hadi*, 830 F.2d at 784-85 (noting security risks associated with allowing inmates to hold positions of religious authority and recognizing potential for conflict if such an inmate is unable to resolve religious issues). Fourth, having submitted no response to Dart's summary judgment motion, Williams provides no obvious alternative to requiring outside volunteers to lead communal religious services "that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests." *Turner*, 482 U.S. at 91; *see also McRoy*, 366 F. Supp. 2d at 677-79.

Accordingly, Dart is entitled to summary judgment on Williams' claim that his Free Exercise rights were violated because only one communal Muslim service was held during his fourth-month stay at the Jail.

**B. RLUIPA**

"RLUIPA prohibits prisons that receive federal funds from imposing a substantial burden on a prisoner's religious exercise unless the burden furthers a compelling governmental interest and does so by the least restrictive means." *Ortiz*, 561 F.3d at 670. To proceed under RLUIPA, Williams must establish that the exercise of his religion was substantially burdened by a governmental practice. 42 U.S.C. § 2000cc(a)(1). If Williams does so, the burden shifts to Dart to demonstrate that the Jail's rules furthered a compelling governmental interest, and that the burden imposed was the least restrictive means of achieving that interest. *Id*. § 2000cc-2(b); *Cutter v. Wilkinson*, 544 U.S. 709, 715-16 (2005). Because Williams has not established that his religious exercise was substantially burdened, Dart is entitled to summary judgment on his RLUIPA claim.

A substantial burden is "one that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise … effectively impracticable." *Civil Liberties for Urban Believers v. City of Chi.*, 342 F.3d 752, 761 (7th Cir. 2003). The Jail's policy of allowing communal Muslim services only when an outside volunteer is available to lead the service did not render worship "effectively impractical" for Williams. Although Williams went without communal services for four months, he was able to pray and keep the Koran in his cell. Moreover, Williams does not identify communal services as among the essential practices of his faith. This case is akin to *Baranowski v. Hart*, 486 F.3d 112 (5th Cir. 2007), where the Fifth Circuit, analyzing a policy comparable to the Jail's, held that the religious exercise of Jewish inmates unable to gather for communal services on the Sabbath and Jewish holidays were not substantially burdened under RLUIPA because they were able to pray in their cells and keep religious materials there. *Id*. at 120-121, 124-25; *see also Anderson v. Harron*, 2009 WL 2058863, at *5 (D.N.J. July 7, 2009) (same for Muslim inmates). There is no discernible basis to reach a different result here.

## Conclusion

For the foregoing reasons, Dart's summary judgment motion is granted.

October 11, 2011

_____
United States District Court Judge